IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BENJAMIN DAVIS,  \*
      Plaintiff,
                                 \*
v.                              CIVIL ACTION NO. WDQ-08-3106
                                 \*
NANCY ROUSE, et al.,
      Defendants.                \*
                              \*\*\*\*\*\*

## MEMORANDUM OPINION

Pending is the Defendants' motion for dismissal or summary judgment, Paper No. 19, and the Plaintiff's motion for Partial Summary Judgment,[1] Paper Nos. 22 and 24. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2008). For the reasons stated below the Defendants' motion for summary judgment will be granted and the Plaintiff's Motion for Partial Summary Judgment will be denied.

### Standard of Review

Fed. R. Civ. P. 56(c) provides that:

> [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the

---

[1] Plaintiff has also moved to amend his Complaint to add six more defendants. Paper No. 24. The motion, filed after receipt of Defendants' dispositive motion, shall be denied. If Plaintiff believes that his constitutional rights were violated by the correctional employees who allegedly failed to provide medical care, he is free to file a new civil rights action.

requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alternation in original) (quoting Fed. R. Civ. P. 56(e)). A court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). A court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Background

Davis alleges that on September 8, 2008, he was "violently handcuffed," dragged through the housing unit and dropped on the pavement by Defendant Harsh. He states that he was subsequently diagnosed with a severe sprain to his right wrist and received a support brace for his injury. Davis advised Defendant Warden Rouse of the incident and that he feared for his safety because of Harsh's continued threats. No action was taken. One week later, Davis was assaulted by Harsh for filing a complaint about the earlier assault. Davis states that the second assault on September 15, 2008, occurred when Harsh directed him to place his hands through the recreation hall door slot to be handcuffed, then grabbed and violently twisted Davis's right wrist which was bandaged from the

2

prior assault. When Davis complained of Harsh's actions, Harsh grabbed and yanked Plaintiff's left wrist across the door slot, causing an eight centimeter laceration that required stitches. Davis suffered nerve damage in his wrist as a result of this injury.

Davis alleges that as a result of his complaints about the assaults, Rouse retaliated against him by "deliberately [falsifying] a recommendation for [his] transfer from medium to maximum security." Davis was placed on protective custody status to protect him from Harsh, but Harsh was able to have contact with him while housed on protective custody. Paper No. 1.

Analysis

1.      Exhaustion

The Defendants' assert that the case should be dismissed because Davis failed to exhaust available administrative remedies. The Prison Litigation Reform Act ["PLRA"] generally requires a prisoner plaintiff to exhaust administrative remedies before filing suit in federal court. Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Thus, the exhaustion provision plainly extends to Davis's allegations. His claims must be dismissed, unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA or that Defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003).

The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process.[2]  In Maryland, filing a request for administrative remedy with the Warden where one is incarcerated is the first step in the ARP process provided by the Division of Correction. If this request is denied, a prisoner has 10 calendar days to file an appeal with the Commission of Correction.  If this appeal is denied, the prisoner has 30 days to file an appeal to the Executive Director of the Inmate Grievance Office.  *See* Md. Code Ann. Corr. Serv. §§ 10-206, 10-210; Md. Regs. Code title 12 § 07.01.03.

On September 9, 2008, Davis filed a request for administrative remedy about the September 8, 2008 assault.  Paper No. 22, Ex. A-1.  The ARP was dismissed and the claim was forwarded to the internal investigation unit.  *Id.*  Davis attempted to appeal this determination but was advised that he could not pursue a claim through the ARP process if it was being investigated by the internal investigation unit.  Paper No. 23, Ex. B-1.

On September 15, 2008, Davis filed a request for administrative remedy concerning the September 15, 2008 incident.  Paper No. 22, Ex. C.  There is no evidence that his ARP was actually received or that any action was taken.

On October 29, 2008, Davis filed a request for administrative remedy concerning his assignment to protective custody and Harsh's continuing threats Paper No. 1, Attachment.  This request was dismissed at the institutional level.

---

[2] *Chase*, 582 F.Supp.2d at 530; *Gibbs v. Bureau of Prisons*, 986 F.Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner

Defendants maintain that Davis has filed seven grievances with the Inmate Grievance Office, none of which concerns claims of excessive force by Harsh against Plaintiff. Paper No. 19, Ex. 7. Further, none of the grievances alleges Rouse failed to protect Davis from Harsh. Defendants concede that Plaintiff filed a grievance concerning his classification from medium to maximum security. *Id.*

Davis has exhausted "available" administrative remedies for his claim of excessive force on September 8, 2008, and for his claim about his classification from medium to maximum security. The record demonstrates, however, that Davis has failed to exhaust his administrative remedies on his claims of excessive force on September 15, 2008 and failure to protect. These claims shall be dismissed.

2.    Excessive Force

Analysis of cruel and unusual punishment claims "necessitates inquiry as to whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Williams v. Benjamin*, 77 F.3d 756, 760 (4th Cir. 1996). To meet the subjective component of this test, a prisoner must show that the force was applied "maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U S. 1, 6-7 (1992) In making this determination, a court must look at the need for the application of force, the relationship between the need and the amount of force applied, the extent of injury inflicted, the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials, and any efforts made to temper the severity of the response. *See Whitley v. Albers*, 475 U. S. 312, 321 (1986).

---

must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

5

The objective element of an excessive force "need not show that [the] force caused an 'extreme deprivation' or 'serious' or 'significant' pain or injury to establish a cause of action. All that is necessary is proof of more than de minimis pain or injury." *Williams*, 77 F.3d at 761(citation omitted); *see also Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994).  There are no medical records which demonstrate that Davis suffered any injury as a result of being handcuffed from behind.  Davis's description of the injury demonstrates that it was minimal. *See Riley v. Dorton*, 115 F. 3d 1159, 1167-68 (4th Cir. 1997) (handcuffing pretrial detainee for six hours, inserting tip of pen in detainee's nose, threatening detainee, and slapping detainee across face, demonstrated no more than minimal injury).

According to Defendants, on September 8, 2008, at approximately 10:15 a.m., Correctional Officer Brumage reported that Plaintiff had engaged in a possible suicide attempt by swallowing a large number of pills. Paper No. 19, Ex. 1-4.  He reported the incident and returned to Plaintiff's cell; where he found Davis unresponsive.  Davis was taken to the dispensary and an ambulance transported Davis to Washington County Hospital at approximately 10:30 a.m.  During his hospitalization, Davis stated he ingested 30 Naprosyn and 10 Actifed, and swallowed laundry detergent.  *Id*., Ex. 3.  Davis was examined at the hospital, nothing remarkable was noted, and he was returned to Roxbury Correctional Institution the same day, and placed in a special area for observation.  *Id*.

The record indicates that Harsh was working on Housing Unit #5 on September 8, 2008, but was assigned to Tier A, not Plaintiff's tier, Tier C.  There is no evidence that Harsh was involved in Davis's transfer from his cell to the infirmary or to the hospital.  *Id*., Ex. 2,6.

6

According to Davis he was unconscious at the time he was removed from his cell. Paper Nos. 1 and 23. Plaintiff has supplied several unsigned affidavits and declarations from other inmates concerning his removal from his cell. Paper No. 23, Ex. F-1-5.

On September 9, 2008, Davis was given a neoprene wrist support. *Id.*, Ex. G-1. On October 12 and 19, 2008, Plaintiff submitted sick call slips indicating he had pain in his wrists from the September assaults, and was "experiencing symptoms of arthritis." *Id.*, Ex. G-2. Davis was evaluated on October 20, 2008, and complained of wrist pain "especially after I do push ups." He was advised to give the wrists time to heal before attempting push ups. *Id.*, Ex. G-6. Plaintiff's sick call slips were noted on October 27, 2008, as "addressed." *Id.*

The evidence indicates that Plaintiff was unconscious during the cell extraction on September 8, 2008, and, therefore, has no firsthand knowledge about those events. The record demonstrates that Harsh was not involved in removing Davis from his cell on that date. There is no evidence of the events described by Davis.

As to the objective component, Davis received a wrist brace after the September 8, 2008 incident. Handcuffing a non-responsive inmate and removing him to the dispensary may have inadvertently sprained Davis's wrist. The injuries he claims are minimal.[3] Accordingly, Harsh is entitled to summary judgment.

3. Classification

Davis claims that his re-classification from medium to maximum security is a denial of due process. Prisoners do not have a constitutional right to any particular type of prison housing. "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty

---

[3] *See Riley v. Dorton*, 115 F.3d 1159, 1167 (4th Cir. 1997) (pain from being tightly handcuffed for six hours, welt on face from slap, and fears for safety were de minimis injuries); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (sore, bruised ear was de minimis injury); *Norman v Taylor*, 25 F.3d at 1263-64 (sore thumb caused by blow from key ring considered de minimis injury).

to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976).  Under *Sandin v. Conner*, 515 U.S. 472 (1995), a liberty interest may be created when state action imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" without regard to mandatory language in prison regulations. *See Sandin*, 515 U.S. at 484.  Thus, the due process inquiry must focus on the nature of the deprivation alleged and not on the language of particular prison regulations.  *Id*. Under *Sandin*, a liberty interest is not implicated when prisoners are transferred from one prison to another.  *See Olim v. Wakinekona*, 461 U.S. 238, 244-45 (1983).

## Conclusion

For the reasons stated above,  the Defendants' Motion for Summary Judgment shall be granted.  The Plaintiff's Motion for Partial Summary Judgment and Motion to Amend will be denied.

December 3, 2009                                              /s/
(Date)                                                William D. Quarles, Jr.
                                                      United States District Judge