IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BENJAMIN DAVIS, <br> Plaintiff, | * | |
| v. | * | CIVIL NO. WDQ-08-3106 |
| NANCY ROUSE, et al., <br> Defendants. | * | |

******

MEMORANDUM OPINION

Benjamin Davis, *pro se*, sued Warden Nancy Rouse and Correctional Officer Joseph Harsh for civil rights violations under 42 U.S.C. § 1983. On December 3, 2009, the Court granted summary judgment to Rouse and Harsh. Davis moved to vacate the judgment under Rule 60(b) on December 11, 2009 and then docketed an appeal from the judgment on December 22, 2009. On March 10, 2010, in light of the Supreme Court's February 22, 2010 decision in *Wilkins v. Gaddy*, 130 S.Ct. 1175 (2010) and new evidence submitted by Davis, the Court entered a Memorandum indicating it would be inclined to grant Davis's Rule 60(b) motion. Davis was advised that the Court could not do so while the case is on appeal, but that he could move the Fourth Circuit for a limited remand so that this Court could rule on his motion. *See* Fed. R. App. P. 12.1; *Fobian v. Storage Tech. Corp.*, 164 F.3d 887, 891 (4th Cir. 1999).[1] On May 5, 2010, the Fourth Circuit entered an Order granting Davis's motion to remand this case to this Court for the limited purpose of permitting this Court to rule on Davis's 60(b) motion.

Relief from judgment pursuant to Rule 60(b) is a matter committed to the discretion of the district court. *See Universal Film Exchanges, Inc. v. Lust*, 479 F.2d 573, 576 (4th Cir. 1973). To

---

[1] "[W]hen a district court is inclined to grant a Rule 60(b) motion during the pendency of an appeal . . . the district court [should] indicate its inclination to grant the motion in writing; a litigant, armed with this positive signal from the district court, can then seek limited remand from the appellate court to permit the district court to grant the Rule 60(b) motion." *Fobian*, 164 F.3d at 891.

prevail on a motion seeking relief under Rule 60(b), a movant must first show that: 1) the motion is timely; 2) there is a meritorious defense; and 3) the opposing party would not suffer unfair prejudice by having the judgment set aside. *See Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894, 896 (4th Cir. 1987). If all threshold conditions are met, the movant must satisfy one or more of the six grounds for relief in 60(b)(1)-(6). *See Werner v. Carbo*, 731 F.2d 204, 207 (4th Cir. 1984). If the movant is able to establish the elements of the first and second stages of this analysis, the "court must balance the competing policies favoring the finality of judgments and justice being done in view of all the facts, to determine, within its discretion, whether relief is appropriate in each case." *Square Construction Co. v. Washington Metro Area Transit Authority*, 657 F.2d 68, 71 (4th Cir. 1981).

The Court first considers the timeliness of the Motion. "Motions under Rule 60(b) must be brought 'within a reasonable time' and 'the movant must make a showing of timeliness.'" *McLawhorn v. John W. Daniel & Co., Inc.,* 924 F.2d 535, 538 (4th Cir. 1991). What constitutes a "reasonable time" for the filing of a Rule 60(b) motion "'depends upon the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and [the consideration of] prejudice [if any] to other parties.'" *Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601, 610 (7th Cir. 1986). This motion was filed within ten days of the entry of the Order dismissing the complaint. Accordingly, the Court deems the motion timely.

In the underlying civil rights complaint, Plaintiff advanced two claims of excessive force: a failure to protect and retaliatory transfer. Failure to have Plaintiff's exhibits properly docketed impeded his ability to oppose the State's arguments. In view of Plaintiff's pro se status and the failure to properly docket the exhibits, it can be concluded that a meritorious defense is available. Certainly, equity compels such a conclusion. Further, Defendants fail to proffer evidence that they

have suffered prejudice by the timing of the motion. No substantive pleadings have been filed since the notice of appeal was noted.

Accordingly, plaintiff has met the threshold conditions. For relief under Rule 60(b)(1), Plaintiff must demonstrate that one of four conditions for relief applies--mistake, inadvertence, surprise, or excusable neglect. *See Universal Film Exchanges, Inc. v. Lust*, 479 F.2d 573, 576 (4th Cir. 1973). In this case, Petitioner contends he is entitled to relief under Rule 60(b)(1) on the basis of mistake, *i.e.* that the Clerk erred in properly docketing both sides of the Affidavits, and that the Court erred in finding he had failed to exhaust administrative remedies as to the September 15, 2008 assault.

Rule 60(b)(1) may be used to relieve a party from court error. See 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2858, at 293-94 (2d. ed.1995). It is important to note, however, that Rule 60(b) is not an avenue for a dissatisfied party to obtain review of a trial court's final order after the time for appeal has expired. *See United States v. McCoy*, 198 F. Supp. 716, 723 (D.N.C.1961). Such is not the case here. The pending Rule 60(b) motion does not substitute for appeal because timely notice of appeal has already been filed. Further, the motion does not seek to reintroduce claims already presented, addressed, and rejected on collateral review.

## Background

Davis alleges that on September 8, 2008, he was "violently handcuffed," dragged through his housing unit, and dropped on the pavement by Defendant Harsh. He states that he was subsequently diagnosed with a severe sprain to his right wrist and received a support brace for his injury. Davis advised Defendant Warden Rouse of the incident and that he feared for his safety because of Harsh's continued threats, but no action was taken. One week later, Davis allegedly was assaulted by Harsh for filing a complaint about the earlier assault. Davis states that the second assault occurred on

September 15, 2008, when Harsh told him to place his hands through the recreation hall door slot to be handcuffed, then grabbed and twisted Davis's right wrist, which was still bandaged from the prior assault. When Davis complained of Harsh's actions, Harsh grabbed and yanked Plaintiff's left wrist across the door slot, causing an eight-centimeter laceration that required stitches. Davis suffered nerve damage in his wrist as a result of this injury.

Davis alleges that as a result of his complaints about the assaults, Rouse retaliated against him by "deliberately [falsifying] a recommendation for [his] transfer from medium to maximum security." Davis was placed in protective custody to protect him from Harsh, but Harsh was able to have contact with him while Davis was housed in protective custody. Paper No. 1.

The Court found that Plaintiff had exhausted his available administrative remedies as to the September 8 assault but not the September 15 assault. Specifically, the Court found that on September 9, 2008, Davis filed a request for administrative remedy ("ARP") about the September 8, 2008 assault. Paper No. 22, Ex. A-1. The ARP was dismissed and the claim was forwarded to the internal investigation unit ("IIU"). *Id.* Davis attempted to appeal this determination but was advised that he could not pursue a claim through the ARP process if it was being investigated by the internal investigation unit. Paper No. 23, Ex. B-1. On September 15, 2008, Davis filed a request for administrative remedy concerning the September 15, 2008 incident. Paper No. 22, Ex. C. The Court previously found that there was no evidence that this ARP was actually received or that any action was taken in regard to this claim. Accordingly, the Court found that Plaintiff's had failed to exhaust administrative remedies for the September 15, 2008 assault and did not reach the merits of that claim.

In his pending motion, Plaintiff provides evidence that his claims regarding the September

4

15, 2008 assault were consolidated with his claims regarding the September 8 assault for investigation by the IIU. Paper No. 28. Given that Plaintiff had previously been advised that he could not pursue a claim through the ARP process if it was being investigated by IIU, Plaintiff took no further action. *Id*. In light of the foregoing, the Court finds Plaintiff has exhausted "available" administrative remedies for his claim of excessive force on September 15, 2008.

In dismissing Plaintiff's excessive force claim arising on September 8, 2008, the Court noted the following: according to Defendants, on September 8, 2008, at approximately 10:15 a.m., Correctional Officer Brumage reported that Plaintiff had engaged in a possible suicide attempt by swallowing a large number of pills. Paper No. 19, Ex. 1-4. He reported the incident and returned to the cell, where he found Davis unconscious. Davis was taken to the dispensary and an ambulance transported him to Washington County Hospital at approximately 10:30 a.m. During his hospitalization, Davis stated he had taken 30 Naprosyn and 10 Actifed, and swallowed laundry detergent. *Id*., Ex. 3. Davis was examined at the hospital, nothing remarkable was noted, and he was returned to Roxbury Correctional Institution the same day and placed in a special area for observation. *Id*. The record indicates that Harsh was working on Housing Unit #5 on September 8, 2008, but was assigned to Tier A, not Plaintiff's tier, Tier C. There is no evidence that Harsh was involved in Davis's transfer from his cell to the infirmary or to the hospital. *Id*., Ex. 2,6.

According to Davis, he was unconscious when he was removed from his cell. Paper Nos. 1 and 23. The Court noted that Davis supplied several unsigned affidavits and declarations from other inmates concerning his removal from his cell. Paper No. 23, Ex. F-1-5. In his pending Motion, Davis indicates that the affidavits were signed on the back by the inmates.[2] A review of the

---

[2] The affidavits were scanned into the docket by Court employees, but the backs of the affidavit do not appear to have been scanned. As such, the Court will take Plaintiff's assertions as true regarding the signatures on the

Affidavits indicates that inmate Byron Israel avers that on September 8, 2008, he witnessed Officer Harsh drag Davis by his feet from his cell and that Plaintiff was not resisting. *Id*. Inmate Omar Mclenna avers that he witnessed Harsh enter Davis' cell "throw him to the ground and handcuff him behind his back. [He] then witnessed Harsh grab both of Inmate Benjamin Davis legs and drag him from the cell out on the tier. The entire time [Davis] was unconscious and not resisting." *Id*. Likewise Bernard Ramseur's affidavit indicates he saw Harsh drag an unconscious Davis out of his cell and down the tier.

On September 9, 2008, Davis was given a neoprene wrist support. *Id*., Ex. G-1. On October 12 and 19, 2008, he submitted sick call slips indicating he had pain in his wrists from the September assaults, and was "experiencing symptoms of arthritis." *Id*., Ex. G-2. Davis was evaluated on October 20, 2008, and complained of wrist pain "especially after I do push ups." He was advised to give the wrists time to heal before attempting push ups. *Id*., Ex. G-6. Davis's sick call slips were noted on October 27, 2008, as "addressed." *Id*.

As for the September 15, 2008 assault, the serious incident report indicates that Defendant Harsh ordered Davis to place his hands through the recreation door slot in order to be handcuffed. According to Defendants, after Davis complied and handcuffs were placed on his left wrist, Davis pulled his hand through the slot and attempted to pull Harsh's arm through the slot as well. Harsh ordered Davis to place his hands back through the slot but Davis responded by yelling "I got you, you stupid motherfucker, I got you. I got you right where I want you." Officers Young, Rice and Thomas responded to the commotion with force. The handcuff was removed from Davis's left wrist and he refused further orders to be handcuffed. Approximately a half hour later, a nurse came to the tier to examine Davis's wrist, and he complied with orders to be handcuffed and was escorted to the

---

affidavits.

dispensary where he received 10 stitches in his wrist. Paper No. 19, Ex. 6. According to Davis he complied with Harsh's orders to be cuffed and without provocation Harsh grabbed and violently twisted Plaintiff's right wrist, intentionally dragging it across the recreation hall door slot, causing the laceration. Paper Nos. 1 and 23.

Davis must confront Defendants' summary judgment motion with an affidavit or similar evidence showing that there is a genuine issue for trial.[3] This he has done. There are genuine disputes of material fact concerning the two assaults on Davis: these are questions about whether the first incident even occurred, as well as the nature of Davis's removal from his cell for medical treatment, and about the nature of the second incident, i.e. whether Davis caused his injury by pulling Harsh's arm through the slot, or whether Harsh maliciously twisted Davis's wrist across the slot in order to cut it. A reasonable jury could conclude that in both instances Harsh was not acting to restore order, but rather was acting maliciously to cause harm.

---

[3] The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).

To prove an Eighth Amendment excessive force claim, The Court must look to whether the "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). Factors include the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *See Whitley v. Albers*, 475 U. S. 312, 321 (1986).

To prove an Eighth Amendment claim for denial of medical care, Plaintiff must demonstrate that the actions of Defendants (or their failure to act) amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment under the Eighth Amendment. *Rhodes v. Chapman*, 452 U. S. 337, 347 (1981). However, conditions which are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society." *Id*.

To the extent Defendants argue that Davis has failed to show more than de minimus injury, the Supreme Court recently abrogated circuit case law which held that more than de minimus injury is necessary to prevail on an Eighth Amendment claim. *See Wilkens v. Gaddy*, 130 S.Ct 1175 (2010) (holding the core judicial inquiry when a prisoner alleges excessive force is not whether a certain quantum of injury was sustained, but rather whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm). The core inquiry therefore remains disputed based on the materials presented to the Court. Whether Defendants acted maliciously and sadistically to cause harm to Davis in September of 2008 is a fact disputed by the parties. The issue requires credibility determinations not appropriate for resolution on summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The Court finds no reason to alter its judgment as to Davis's complaints regarding failure to protect or classification decisions.

## Conclusion

For the reasons stated above, Plaintiff's Motion for Reconsideration is granted. The Court's Memorandum Opinion and Order of December 3, 2009, are vacated in part. Plaintiff's claims of excessive force shall proceed. All other claims are dismissed as stated in the December 3, 2009 Memorandum Opinion. Counsel shall be appointed for Davis. A separate Order follows.

May 17, 2010 /s/
Date William D. Quarles, Jr.
United States District Judge