IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OR MARYLAND, NORTHERN DIVISION

<table>
<tr><td>BENJAMIN DAVIS,</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>Plaintiff,</td><td>*</td><td></td></tr>
<tr><td>v.</td><td>*</td><td>CIVIL NO.: WDQ-08-3106</td></tr>
<tr><td>NANCY ROUSE, <em>et al.</em>,</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>Defendants.</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
</table>

*     *     *     *     *     *     *     *     *     *     *     *     *

MEMORANDUM OPINION

Benjamin Davis sued Nancy Rouse, Joseph Harsh, and Gary
Maynard under 42 U.S.C. § 1983 for violating his First, Eighth
and Fourteenth Amendment rights, and for state torts.  For the
following reasons, Maynard's motion to dismiss the third amended
complaint will be granted with leave to amend.

I.   Background[1]

Davis was a prisoner at Roxbury Correctional Institution
("Roxbury") in Hagerstown, Maryland.  3d Amend. Compl. ¶ 1.
Rouse is Roxbury's warden, Harsh is a correctional officer
there, and Maynard is the Secretary of Public Safety and
Correctional Services for the State of Maryland.  *Id.* at ¶¶ 2-4.

On September 8, 2008, Harsh found Davis "apparently
unconscious and unresponsive" in his cell.  *Id.* ¶ 9.   Harsh

---

[1]   For the motion to dismiss, the well-pled allegations in
Davis's  complaint are accepted as true.  *See Mylan Labs., Inc.
v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993).

"grabbed and violently twisted" Davis's left leg, causing him to fall and hit his head on the floor. *Id.* ¶ 10. Harsh then twisted Davis's right arm behind his back, handcuffed him, and dragged him by the legs out his cell before "dropp[ing] him to the pavement while still apparently unconscious." *Id.* ¶¶ 11-15. Davis's right wrist was sprained, and Roxbury's medical staff later gave him a brace for the injury. *Id.* ¶¶ 17-18.

On September 9, 2008, Davis filed a "request for administrative remedy . . . informing . . . Rouse of the incident." *Id.* ¶ 19. In his complaint, Davis stated that he was "afraid for his life" because Harsh had been "targeting" him for a month. *Id.* ¶ 20. Davis was told that his complaint had been referred to the Internal Investigation Unit, but alleges that it was never investigated. *Id.* ¶¶ 21-22.

On September 15, 2008, Harsh "approached [Davis] in the recreation room and requested that [he] place his hands through the door slot [to] be[] handcuffed." *Id.* ¶ 26. Davis complied, and Harsh "violently grabbed [his] injured right wrist," which was still in the brace. *Id.* ¶ 28. When Davis complained that Harsh was hurting him, Harsh grabbed his left wrist and "dragged it across the sharp edge of the door slot, causing a laceration" which "bled profusely." *Id.* ¶¶ 30-31. Davis requested that other correctional officers present call a "superior correctional officer"; they "conferred . . . out of earshot,"

2

refused to call a superior, and left Davis "bleeding and in pain
in the recreation room." *Id.* ¶¶ 32-36.

About two hours later, Davis was "finally transported to
the dispensary and treated for his laceration," which required
"10 sutures to close." *Id.* ¶¶ 37-39.  The same day, Davis filed
a request for administrative remedy. *Id.* ¶ 40.  His complaint
was referred to the Internal Investigation Unit, and Davis "was
advised the he could not pursue the administrative remedy
process while the complaint was being investigated." *Id.* ¶ 41.

On September 22, 2008, Davis filed a request for an
administrative remedy "directly with J. Michael Stouffer," the
Commissioner of the Department of Corrections ("DOC"),
complaining about "Rouse's deliberate indifference to [his]
safety." *Id.* ¶ 46.  He stated that he had complained about the
September 8 and September 15 incidents to Rouse, but she "did
nothing in response." *Id.*  On September 26, 2008, Davis was
placed in protective custody but "Harsh continued to have
contact with [him]." *Id.* ¶¶ 47-48.

On October 1, 2008, a hearing was held on allegations made
by Harsh that Davis had assaulted him during the September 15,
2008 incident in the recreation room. *Id.* ¶¶ 43-44, 50.
Although the hearing officer determined that Davis had not
assaulted Harsh, on October 2, 2008, Rouse recommended that

Davis be transferred to a maximum security prison because of his "assaultive behavior." *Id.* ¶¶ 50-51.

On October 14, 2008, D. Greene, a DOC employee, wrote to Davis about his September 22, 2008 request for an administrative remedy. *Id.* ¶ 52. The letter stated that "the administrative remedy was received and was . . . referred to . . . Rouse for her review." *Id.* On October 29, 2008, because "Harsh continued to have contact with [Davis]," Davis filed another request for an administrative remedy with the DOC. *Id.* ¶¶ 53-54. The next day, that request was dismissed because Davis could "not seek relief through the ARP procedures regarding case management recommendations and decisions." *Id.* ¶ 54.

On November 12, 2008, after Commissioner Stouffer's approval, Davis was transferred to North Branch Correctional Institution ("NBCI"), a maximum security prison in Cumberland, Maryland. *Id.* ¶¶ 57, 100. Davis alleges that because of his transfer, his belongings were taken, and he "was denied parole." *Id.* ¶ 58.

On November 7, 2008, Davis sued Rouse and Harsh for various constitutional violations. ECF No. 1. He amended his complaint on March 19, 2009. ECF No. 16. On December 3, 2009, the Court granted summary judgment for Rouse and Harsh. ECF No. 26. On December 11, 2009, Davis moved to vacate the judgment under Rule 60 (b). ECF No. 28. That motion was granted in part, and

4

denied in part on May 17, 2010. ECF No. 34. The Court ruled
that Davis's § 1983 excessive force claims could proceed. *Id.*
at 7. Counsel was appointed, and on October 8, 2010, Davis
filed a second amended complaint, which named Maynard as a
defendant. ECF No. 43. On April 18, 2011, Davis filed his
third amended complaint. ECF No. 52. On April 28, 2011,
Maynard moved to dismiss. ECF No. 58.

II.  Analysis

     A.  Standard of Review

     Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed
for failure to state a claim upon which relief can be granted.
Rule 12(b)(6) tests the legal sufficiency of a complaint, but
does not "resolve contests surrounding the facts, the merits of
a claim, or the applicability of defenses." *Presley v. City of
Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006).

     The Court bears in mind that Rule 8(a)(2) requires only a
"short and plain statement of the claim showing that the pleader
is entitled to relief." *Midgal v. Rowe Price-Fleming Int'l
Inc.,* 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's
notice-pleading requirements are "not onerous," the plaintiff
must allege facts that support each element of the claim
advanced. *Bass v. E.I. Dupont de Nemours & Co.,* 324 F.3d 761,
764-65 (4th Cir. 2003). These facts must be sufficient to

"state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

This requires the plaintiff to do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009)(*quoting Twombly,* 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 1950. "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted).

    B.   Maynard's Motion

        1.   Section 1983 Claims

            a.   Count Five: Failure to Supervise

Count Five of the third amended complaint alleges that Maynard "failed to properly train and supervise . . . Harsh and Rouse," which resulted in Harsh's attacks on Davis and Rouse's failure to prevent Harsh's continued contact with him. 3d Amend. Compl. ¶¶ 79-80. Maynard argues that Count Five should be dismissed because the allegations are insufficient to hold him "individually liable under § 1983 . . . on a theory of

supervisory liability." Def.'s Mot. 5. Davis contends that
drawing all reasonable inferences in his favor, he has
adequately stated a claim for supervisory liability. Pl.'s
Opp'n 10-11.

Section 1983 provides a remedy against any person who,
acting under color of law, deprives another of constitutional
rights. 42 U.S.C. § 1983. It "is not itself a source of
substantive rights, but merely provides a method for vindicating
federal rights elsewhere conferred." *Albright v. Oliver,* 510
U.S. 266, 271 (1994)(internal quotation marks and citation
omitted).

Under § 1983, a plaintiff "must plead that each Government-
official defendant, through the official's own individual
actions, has violated the Constitution." *Iqubal,* 129 S. Ct. at
1948. A plaintiff cannot maintain a § 1983 action under a
*respondeat superior* theory. *Monell v. N.Y. City Dep't of Soc.
Servs.,* 436 U.S. 658, 691-94 (1978). But, supervisory officials
may, in certain circumstances, be liable "for the constitutional
injuries inflicted by their subordinates." *Shaw v. Stroud,* 13
F.3d 791, 798 (4th Cir. 1994). To show such liability, a
plaintiff must allege:

> (1) That the supervisor had actual or
> constructive knowledge that his subordinate was
> engaged in conduct that posed a 'pervasive and
> unreasonable risk' of constitutional injury to
> citizens like the plaintiff; (2) that the

7

> supervisor's response to that knowledge was so
> inadequate as to show 'deliberate indifference to
> or tacit authorization of the alleged offensive
> practice,' and (3) that there was an 'affirmative
> causal link' between the supervisor's inaction
> and the particular constitutional injury suffered
> by the plaintiff.

*Id.* at 799 (citations omitted).[2]

Maynard argues that the failure to supervise claim must be dismissed because Davis has not alleged facts showing his actual or constructive knowledge that Rouse or Harsh posed a "pervasive and unreasonable risk" of constitutional injury.  Def.'s Repl 6-7.  Davis contends that he has shown Maynard's knowledge by alleging that he filed complaints about their conduct with the DOC, which Maynard oversees.  Pl.'s Opp'n 9-10.

To satisfy the first *Shaw* element, the supervisor must have actual or constructive knowledge that his subordinate's behavior posed a "pervasive and unreasonable risk" of constitutional harm.  13 F.3d at 799.   Conduct is "pervasive and unreasonable" if it "widespread," or has at least occurred "on several different occasions."  *Randall v. Prince George's Cnty.,* 302 F.3d 188, 206 (4th Cir. 2002).  The supervisor's constructive knowledge of the risk "can be alleged in multiple ways, including the existence of written reports of conditions at a

---

[2]   This type of claim is premised upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict."  *Shaw,* 13 F.3d *at* 798.

detention facility, or a supervisor's high level of responsibility coupled with the violations alleged to have occurred on her or his watch." *Jones v. Murphy,* 470 F. Supp. 2d 537, 546 (D. Md. 2007).

But, the Court also bears in mind that liability under § 1983 "depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise"; selecting defendants on the assumption that everyone "higher up the bureaucratic chain" from those who knew of a constitutional violation is a "bad" approach. *Burks v. Raemisch,* 555 F.3d 592, 593 (7th Cir. 2009).

Accepting the allegations in the third amended complaint as true and viewing them in the light most favorable to Davis, the Court is unable to conclude that he has adequately pled Maynard's actual or constructive knowledge that Harsh or Rouse presented a "pervasive and unreasonable" risk.[3]   In support of Maynard's knowledge, Davis has merely alleged that he filed two complaints with the department Maynard oversees; these complaints were filed with Stouffer and handled by "D. Green." The third amended complaint does not include a general

---

[3]   Davis has sufficiently alleged that Harsh and Rouse posed a pervasive risk. He has alleged that Harsh targeted him for a month, causing him to fear for his life, and assaulting him on two occasions. He has also alleged that he repeatedly notified Rouse of this risk, but she allowed Harsh to have continued contact with him. *See Randall,* 302 F.3d at 206.

allegation that Maynard was aware of the complaints, or problems
with the staff at Roxbury.  The allegations do not allow the
Court to reasonably infer that Maynard may be liable to Davis
under § 1983.[4]

In his opposition to Maynard's motion, Davis relies heavily
on facts not alleged in the complaint to argue that Maynard had
at least constructive notice of the risk.  *See* Pl.'s Opp'n 3.[5]
These facts are not in the complaint, and Davis has not
supported these assertions with materials the Court could
consider if it were to convert the motion to dismiss to one for

---

[4]   *Compare Jones,* 470 F. Supp. 2d at 546 (supervisory liability
was sufficiently alleged when plaintiffs "alleg[ed] generally
that the Wardens had actual and constructive notice" of risks at
the prison, they specifically alleged "that widespread
deficiencies at the [prison] . . . were documented in a series
of reports, newspaper articles, and court cases dating back many
years," and "thoroughly set out allegations regarding the
Wardens' authority and various duties of training, supervising,
disciplining, and formulating and implementing policy) *with
Adams v. Univ. of Md. at Coll. Park,* 2001 WL 333095, at *4 (D.
Md. March 6, 2001)("Absent specific allegations connecting
conduct by [the supervisory official] to Plaintiff's alleged
constitutional deprivation, the Court must dismiss [the § 1983]
claim [for] . . . lack of detail.").

[5]   For example, Davis states that in April 2007, DOC officials
found that Harsh had violated several standards of conduct—
including by using excessive force on an inmate—but "no
disciplinary action . . . was taken."  Pl's Opp'n 3. He also
states that in March 2008, several Roxbury corrections officers
were terminated for using excessive force, and Maynard publicly
responded to the terminations by stating that the DOC "has a
zero tolerance policy when it comes to the use of excessive
force."  *Id.* at 4.  On May 31, 2011, United States Magistrate
Judge Stephanie A. Gallagher granted Davis's motion to compel
documents related to these facts in part. *See* ECF No. 76.

summary judgment.  The Court cannot consider unsworn statements found only in Davis's opposition when determining if his complaint is sufficient.  Accordingly, the motion to dismiss Count V will be granted.

Davis has requested leave to amend so that he may include these facts, and Maynard has not objected to a fourth amendment of the complaint.  *See* Pl.'s Opp'n 17; Def.'s Reply.  Because it does not appear that amendment would be futile, Davis will be granted leave to amend.  *See Jones,* 470 F. Supp. 2d at 546.

> b.   Count Eight: Retaliation Claim

Count Eight alleges that Maynard retaliated against Davis for filing the requests for administrative remedy, which were "free speech protected by the First Amendment," because Maynard oversaw DOC's "Case Management Review team" and Commissioner Stouffer, who approved Davis's "improper transfer" to NBCI.  3d Amend. Compl. ¶¶ 97, 100-103.  Again, this claim is premised on supervisory liability, and fails because Davis has not shown Maynard's actual or constructive knowledge of his administrative complaints.  Accordingly, Count Eight will be dismissed.

> 2.   State Tort Claims

Counts Six and Seven of the third amended complaint state claims for negligence against Maynard for his failure to train and supervise Harsh and Rouse, and *respondeat superior* liability for Harsh and Rouse's negligence.  Maynard argues that these

claims must be dismissed because he is immune from tort liability under the Maryland Tort Claims Act ("MTCA"). Def.'s Mot. 9.

Under the MTCA,[6] "Maryland [immunizes] state personnel who commit a 'tortious act or omission . . . within the scope of the[ir] public duties,' provided the act or omission 'is made without malice or gross negligence.'" *Henry v. Purnell,* 619 F.3d 323, 342 (4th Cir. 2010) (alterations in original) (*quoting Okwa v. Harper,* 360 Md. 161, 757 A.2d 118, 128 (2000)). Under the MTCA, Maynard has no immunity for malicious or grossly negligent conduct. *Id.; Shoemaker v. Smith,* 353 Md. 143, 158, 725 A.2d 549 (1999).

A state official is grossly negligent when he is "so utterly indifferent to the rights of others that he acts as if such rights did not exist." *Barbe v. Pope,* 402 Md. 157, 935 A.2d 699, 717 (2007). Gross negligence requires "an intentional failure to perform a manifest duty in reckless disregard for the consequences." *Id.* Malice requires "actual malice," meaning that the official must have acted with an "improper motive, or . . . an affirmative intent to injure." *Shoemaker,* 725 A.2d at 559. "[C]onclusory allegations" of gross negligence or malice are "not enough to bring the claim outside of the immunity and non-liability provisions of the MTCA." *Barbe,* 402 Md. at 188.

---

[6] Md. Code. Ann., State Gov't § 12-104.

12

Davis contends that the tort claims should not be dismissed because Maynard's gross negligence or malice is shown by: "(1) his failure to discipline Harsh when he violated numerous policies at Roxbury . . . in 2007, (2) his failure to respond, investigate or otherwise act upon [Davis's] complaint . . . that Rouse refused to protect [him] from Harsh, and (3) his allowing Warden Rouse to simply dismiss [Davis's] complaint about her failure to protect him."  Pl.'s Opp'n 16.  As discussed above, Davis's complaint does not contain any allegations about Harsh's previous violations, and Davis has not alleged Maynard's awareness of, or deliberate indifference to, the conduct of Harsh or Rouse.  Davis has not shown Maynard's gross negligence or malice, and the motion to dismiss will be granted as to Counts Six and Seven.

III.   Conclusion

For the reasons stated above, Maynard's motion to dismiss will be granted without prejudice, and Davis will be granted leave to amend his complaint.

_____9/12/11_____
Date

_____
William D. Quarles, Jr.
United States District Judge

13