IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OR MARYLAND, NORTHERN DIVISION

BENJAMIN DAVIS,

       Plaintiff,

          v.               CIVIL NO.: WDQ-08-3106

NANCY ROUSE, *et al.*,

       Defendants.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

MEMORANDUM OPINION

Benjamin Davis sued Nancy Rouse, Joseph Harsh, Gary
Maynard, and Richard Miller under 42 U.S.C. § 1983 for violating
his First, Eighth and Fourteenth Amendment rights, and for state
torts.  For the following reasons, Maynard's motion to dismiss
the fourth amended complaint will be granted, and Miller's
motion will be denied.

I.   Background[1]

Davis was a prisoner at Roxbury Correctional Institution
("Roxbury") in Hagerstown, Maryland.  ECF No. 84 ¶1.  Rouse is
Roxbury's warden, Harsh is a correctional officer there, Miller
was a shift commander at Roxbury, and became Chief of Security
for Public Safety and Correctional Services for the State of
Maryland ("PSCS") and Maynard is the Secretary of PSCS.  *Id.*

---

[1] For the motion to dismiss, the well-pled allegations in the
complaint are accepted as true.  *Brockington v. Boykins*, 637
F.3d 503, 505 (4th Cir. 2011).

¶¶2-5.  Davis alleged that Roxbury repeatedly covered up prisoner abuse, and he was targeted for protesting the abuses.

On March 14, 2007, Davis saw Harsh in an altercation with inmate Anthony McMillian.  *Id.* ¶¶10, 15.  Davis gave a written statement supporting McMillian's Internal Investigative Unit ("IIU") complaint against Harsh.  *Id.* ¶12.  Miller, a Roxbury shift commander at the time, knew of the incident between Harsh and McMillian.  *Id.* ¶13.  On April 10, 2007, the Roxbury disciplinary committee found that Harsh had used excessive force, and Harsh and another officer had lied and filed false statements to cover up the incident.  *Id.* ¶17.  Under Maryland Department of Corrections ("DOC") policy, Harsh's use of excessive force should have resulted in termination.  *Id.* ¶23. Harsh was not disciplined, and no record of the findings was placed in his file.  *Id.* ¶¶26-27.

On March 8 and 9, 2008, correctional officers at Roxbury placed inmate Kenneth Davis (not related to the plaintiff) in an isolation cell and "took turns beating the handcuffed K[enneth] Davis over three, eight-hour work shifts."  *Id.* ¶34.  "Senior administrators" investigated the incident and disciplined and terminated several correctional officers for participating in the assault, failing to report it, and filing false incident reports.  *Id.* ¶¶35-39.  The incident received attention from area newspapers, television, and radio stations, including *The*

*Baltimore Sun*, which reported "allegations that additional inmates were beaten at Roxbury." *Id.* ¶¶41-42.  Maynard spoke to the media, including FoxNews, about the Kenneth Davis assault. *Id.* ¶44.

In June and July 2008, Davis had a severe urinary tract or bladder infection and an ear infection in each ear.  *Id.* ¶57. Despite his requests, medical personnel made no walk throughs of his unit and did not respond to his requests for medical attention for six weeks.[2]  *Id.* ¶48, 58-59.  The correctional officers assigned to the segregation unit did not report the lack of medical attention.  *Id.* ¶56.

On August 5, 2008, Davis refused to return to his cell from outdoor recreation, until he received treatment for his infections.  *Id.* ¶60.  Davis returned to his cell after he was promised medical care.  *Id.* ¶64.  Miller told Rouse about the incident, Davis's motivation, and the ignored requests for medical attention; Miller said the lack of attention was "ridiculous."  *Id.* ¶¶62-63.

Roxbury locked down the segregation unit and brought in medical personnel to treat the inmates, including Davis.  *Id.*

---

[2] Davis could have filed a Request for Administrative Remedy ("ARP") about his lack of treatment, but he felt the ARP process was so ineffective that the request would be ignored.  *Id.* ¶¶49-50.

¶65.  No disciplinary action was taken against the officers who had not reported the lack of medical care.  *Id.* ¶67.

On September 8, 2008, a correctional officer found Davis "apparently unconscious and unresponsive" in his cell.[3]  *Id.* ¶68. Harsh or another officer "grabbed and violently twisted" Davis's left leg, dragged him off his bunk, and hit his head on the floor.  *Id.* ¶72.  Harsh then twisted Davis's right arm behind his back, handcuffed him, and dragged him by the legs out of his cell and through the housing unit, before "dropp[ing] him to the pavement while still unresponsive."  *Id.* ¶¶73-77.  Davis's right wrist was sprained, and Roxbury's medical staff later gave him a brace for the injury.  *Id.* ¶¶79-80.[4]

On September 9, 2008, Davis filed an ARP "informing . . . Rouse of . . . Harsh's assaultive behavior."  *Id.* ¶90.  In his complaint, Davis stated that he was "afraid for his life" because Harsh had been "targeting" him since he had protested the medical inattention.  *Id.* ¶91.  Davis was told that his

---

[3] DOC policies do not instruct officers how to handle an unconscious inmate, but they note that sometimes force is warranted, and require use of a gurney to move unresponsive inmates.  ECF No. 84 ¶¶69-70, 78.

[4] Internal DOC communications about the incident did not mention how Davis was handled or the injuries he sustained, instead stating that Davis had "behavioral problems" and might have been attempting suicide.  ECF No. 84 ¶¶82-89.  Rouse, Miller, and Maynard received such reports.  *Id.* ¶¶84, 89.

complaint had been dismissed and referred to the IIU, but he alleges that it was never investigated. *Id.* ¶¶92-93.

On September 15, 2008, Harsh "approached [Davis] in the recreation room and requested that [he] place his hands through the door slot [to] be[] handcuffed." *Id.* ¶97. Davis complied, and Harsh "violently grabbed [his] injured right wrist," which was still in the brace. *Id.* ¶¶98-99. When Davis complained that Harsh was hurting him, Harsh grabbed his left wrist and "dragged it across the sharp edge of the door slot, causing a laceration" which "bled profusely." *Id.* ¶¶100-02. Davis asked other correctional officers to call a "superior correctional officer"; they "conferred . . . out of earshot," refused to call a superior, and left Davis "bleeding and in pain in the recreation room." *Id.* ¶¶106-07.

About two hours later, Davis was "finally transported to the dispensary and treated for his laceration," which required "10 sutures to close." *Id.* ¶¶111-12. The same day, Davis filed an ARP.[5] *Id.* ¶113.

On September 17, 2008, case management supervisor Denise Gelsinger and Miller approved raising Davis's security status, from medium to maximum security, in violation of DOC procedures for changing security status other than during an annual status

---

[5] Davis alleges that, at about this time, Roxbury "was committed to quieting victim-inmates" because of "adverse media attention" related to the assault on Kenneth Davis. ECF No. 84 ¶¶115-17.

evaluation.  Gelsinger and Miller were later promoted.  *Id.*
¶¶123-36.  Davis alleges that his security status was raised in
response to his complaints.  *Id.* ¶132.

On September 22, 2008, Davis filed an ARP "directly with J.
Michael Stouffer," the Commissioner of the DOC, complaining
about "Rouse's deliberate indifference to [his] safety."  *Id.*
¶137.  He stated that he had complained about the September 8
and September 15 incidents to Rouse, but she "did nothing in
response."  *Id.*  On September 26, 2008, Davis was placed in
protective custody but "Harsh continued to have contact with
[him]."  *Id.* ¶¶138-39.

On October 1, 2008, a hearing was held on Harsh's charge
that Davis had assaulted him during the September 15, 2008
incident in the recreation room.  *Id.* ¶¶119-20, 140.  Although
the hearing officer determined that Davis had not assaulted
Harsh, on October 2, 2008, Rouse recommended that Davis be
transferred to a maximum security prison because of his
"assaultive behavior."  Gelsinger told a DOC employee that Davis
needed to be moved because he "ke[pt] assaulting staff."  *Id.*
¶¶141-42.

On October 14, 2008, D. Greene, a DOC employee, told Davis
that he had referred to Rouse "for her review" Davis's September
22, 2008 ARP charging Rouse with violations.  *Id.* ¶147.  On
October 29, 2008, because "Harsh continued to have contact with

[Davis]," Davis filed another ARP with the DOC.  *Id.* ¶148.  The
next day, that request was dismissed by the DOC because Davis
could "not seek relief through the ARP procedures regarding case
management recommendations and decisions."  *Id.* ¶149.

On November 12, 2008, Davis was transferred to North Branch
Correctional Institution ("NBCI"), a maximum security prison in
Cumberland, Maryland.  *Id.* ¶¶143-44.  Davis alleges that because
of his transfer, his belongings were taken, and he "was denied
parole."  *Id.* ¶144.

On November 7, 2008, Davis sued Rouse and Harsh for various
constitutional violations.  ECF No. 1.  He amended his complaint
on March 19, 2009.  ECF No. 16.  On December 3, 2009, the Court
granted summary judgment for Rouse and Harsh.  ECF No. 26.
On December 11, 2009, Davis moved to vacate the judgment under
Rule 60(b).  ECF No. 28.  That motion was granted in part, and
denied in part on May 17, 2010.  ECF No. 34.  The Court ruled
that Davis's § 1983 excessive force claims could proceed.  *Id.*
at 7.  Counsel was appointed, and on October 8, 2010, Davis
filed a second amended complaint, which named Maynard as a
defendant.  ECF No. 43.  On April 18, 2011, Davis filed his
third amended complaint.  ECF No. 52.  On September 13, 2011,
the Court dismissed the counts against Maynard in the third
amended complaint, granting leave to amend the complaint.  ECF
No. 83.  On October 3, 2011, Davis filed a fourth amended

7

complaint,[6] which named Miller as a defendant.  ECF No. 84.  On November 23, 2011, Harsh and Rouse answered the complaint, and Maynard moved to dismiss the allegations against him.  ECF Nos. 90, 91.  On January 18, 2012, Miller moved to dismiss the allegations against him.  ECF No. 115.  Davis opposed the motions.  ECF Nos. 93, 124.

## II.  Analysis

### A.  Standard of Review

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  *Migdal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325-26 (4th Cir. 2001).  Although Rule 8's

---

[6] The fourth amended complaint contains nine counts: battery, against Harsh (count I), intentional infliction of emotional distress, against Harsh and Rouse (count II), violation of the Maryland Declaration of Rights, against Harsh and Rouse (count III), § 1983/Eighth and Fourteenth Amendments, against Harsh (count IV), § 1983/failure to properly train and supervise, against Maynard (count V), negligence, against Maynard (counts VI and VII), § 1983/First and Fourteenth Amendments, against all defendants (count VIII), and § 1983/Eighth and Fourteenth Amendments, against Rouse and Miller (count IX).  ECF No. 84.

notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.,* 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). This requires the plaintiff to do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Twombly,* 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 679. "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not shown--that the pleader is entitled to relief." *Id.* (internal quotation marks omitted).

    B.   Maynard's Motion

        1.   Section 1983 Claims

Section 1983 provides a remedy against any person who, acting under color of law, deprives another of constitutional rights. 42 U.S.C. § 1983. It "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver,* 510

U.S. 266, 271 (1994) (internal quotation marks and citation omitted).

Under § 1983, a plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal,* 556 U.S. at 676. A plaintiff cannot maintain a § 1983 action under a *respondeat superior* theory. *Monell v. N.Y. City Dep't of Soc. Servs.,* 436 U.S. 658, 691-94 (1978). But, supervisory officials may, in certain circumstances, be liable "for the constitutional injuries inflicted by their subordinates." *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir. 1994). To show such liability, a plaintiff must allege:

> (1) That the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practice,' and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Id.* at 799 (citations omitted).[7]

The first *Shaw* element requires that the supervisor have actual or constructive knowledge that his subordinate's behavior

---

[7] This type of claim is premised upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict." *Shaw,* 13 F.3d *at* 798.

posed a "pervasive and unreasonable risk" of constitutional
harm.  13 F.3d at 799.   Conduct is "pervasive and unreasonable"
if it is "widespread," or has at least occurred "on several
different occasions."  *Randall v. Prince George's Cnty.,* 302
F.3d 188, 206 (4th Cir. 2002).  The supervisor's constructive
knowledge of the risk "can be alleged in multiple ways,
including the existence of written reports of conditions at a
detention facility, or a supervisor's high level of
responsibility coupled with the violations alleged to have
occurred on her or his watch."  *Jones v. Murphy,* 470 F. Supp. 2d
537, 546 (D. Md. 2007).[8]

The second *Shaw* element requires that the supervisor have
shown "continued inaction in the face of documented widespread
abuses."  *Shaw,* 13 F.3d at 799.[9]  A supervisor who "responds
reasonably to a known risk is not deliberately indifferent even
if the harm is not averted," or if his response, in hindsight,
was "unfortunate or even imprudent."  *Baynard v. Malone,* 268

---

[8] The Court also bears in mind that liability under § 1983
"depends on each defendant's knowledge and actions, not on the
knowledge or actions of persons [he] supervise[d]"; the
selection of defendants should not be based on the assumption
that everyone "higher up the bureaucratic chain" knew of a
constitutional violation.  *Burks v. Raemisch,* 555 F.3d 592, 593
(7th Cir. 2009).

[9] *See also Baynard v. Malone,* 268 F.3d 228, 236 (4th Cir. 2001)
(failure to respond "to mounting evidence of potential
misconduct by [subordinate]" showed supervisor's deliberate
indifference).

F.3d 228, 236 (4th Cir. 2001) (internal quotation marks and citation omitted).  Investigation and discipline of the offenders is a reasonable response to a known risk, and absolves a supervisor of liability under *Shaw*.  *See Mikkelsen v. De Witt*, 141 F. App'x 88, 92 (4th Cir. 2005).

           a.   Count V: Failure to Supervise

Count V alleges that Maynard failed to properly train and supervise Harsh, Rouse, and Miller, which resulted in Harsh's attacks on Davis, and Rouse and Miller's failure to protect Davis from Harsh, and Maynard knew of, and ignored, Davis's complaints about excessive force and failure to protect.  ECF No. 84 ¶¶173-83.  Maynard argues that count V should be dismissed because the allegations do not show that Maynard "had personal knowledge" of the September 8 and 15 assaults.  ECF No. 90-1 at 3.

Maynard argues that he is a "high-ranking official supervising many institutions, divisions, and agencies," is "far-removed from day-to-day prison administration," and Davis has not alleged Maynard's knowledge of the allegedly tortious acts.  ECF No. 90-1 at 7-8.  Further, he contends that Davis did not sufficiently allege that Maynard's failure to supervise caused his injuries.  *Id.* at 10.

Davis has alleged facts showing that Maynard knew or should have known that correctional officers at Roxbury posed a

12

pervasive threat to the health and safety of inmates, and that Rouse posed a threat by failing to protect the inmates from the officers' repeated harms.[10]  Davis alleged that at least two other inmates were assaulted during the year before Harsh began to abuse him;[11] reports, DOC records, and schedule changes called attention to the assaults;[12] area media also discussed the Kenneth Davis incident, and Maynard was made aware--if he was not already--by his discussions with news media.[13]

Davis has not, however, adequately pled that Maynard's response was "so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practice.'" *Shaw*, 13 F.3d at 799.  After Kenneth Davis was assaulted, Maynard told FoxNews that he would "not tolerate excessive force."  "Senior administrators" promptly investigated the matter, and terminated and disciplined the participating

---

[10] In its September 2011 Memorandum Opinion, this Court concluded that Davis had sufficiently alleged that Rouse and Harsh posed a pervasive and unreasonable threat of constitutional harm to inmates.  ECF No. 82 at 9 n.3.  Though the factual allegations have changed slightly, the fourth amended complaint supports this conclusion--Harsh repeatedly targeted Davis for a month, Harsh and others had assaulted other inmates during the year before Davis was assaulted, and Rouse allowed Harsh to have continued contact with Davis after several notices about Harsh's behavior.  ECF No. 84 ¶¶67-77,97-107, 137-39.

[11] ECF No. 84 ¶¶10-23 (McMillian), 33-39 (Kenneth Davis).

[12] ECF No. 84 ¶¶17, 62; 66.

[13] ECF No. 84 ¶44.

officers and those who failed to report or tried to cover up the

incident.  ECF No. 84 ¶¶35-39.  Investigation and discipline of

offenders is a reasonable response to a known risk, and absolves

a supervisor of liability under *Shaw*.[14]  *See Mikkelsen*, 141 F.

App'x at 92.  The allegations do not allow the Court to

reasonably infer that Maynard may be liable to Davis under §

1983.  As Davis has already had the chance to amend his

complaint with the assistance of counsel to properly state a

*Shaw* claim against Maynard, and he has instead alleged facts

showing that Maynard is *not* liable under *Shaw*, amendment would

be a futile waste of time.  Count V will be dismissed with

prejudice.

> b.    Count VIII: Retaliation

Count VIII alleges that Harsh, Rouse, Miller, and Maynard

retaliated against Davis for exercises of free speech, such as

---

[14] Though the allegations do not indicate that Maynard, or his
agents, took any action in response to the McMillian assault,
there also appears to have been much less, if any, documentation
of that incident-- no record was placed in Harsh's file and no
disciplinary action was recorded or taken--and it occurred
before the Kenneth Davis assault.  ECF No. 84 ¶¶17, 25-27; *see
Randall*, 302 F.3d at 206 (isolated incident is insufficient to
show knowledge).  Thus, if Maynard knew or should have known
that the Kenneth Davis assault was not an isolated incident, his
and the DOC's remedial response to the Kenneth Davis assault
breaks the chain of causation between earlier incidents and the
attacks on Davis.  *See Shaw*, 13 F.3d at 799 (causation may be
shown by proximate cause principles); *Fisher v. Neale*, No. 10-
0486, 2011 WL 887615,*9 (E.D. Va. Mar. 14, 2011) (plaintiff did
not show causation when defendant officers took remedial action
after first problems arose and before injury occurred).

filing ARPs and participating in investigations.  Davis alleges

that Maynard retaliated against Davis's complaints because he

supervised DOC's Case Management Review team, and Commissioner

Stouffer, who approved Davis's transfer to NCBI.  ECF No. 84

¶203.  This claim is premised on supervisory liability,[15] and

fails--as did the third amended complaint--because Davis has not

shown Maynard's actual or constructive knowledge of Davis's

administrative complaints.[16]  Accordingly, Count VIII will be

dismissed.

                    c.   Qualified Immunity

     As both § 1983 claims will be dismissed, the Court need not

determine whether Maynard is entitled to qualified immunity.

               2.   State Tort Claims

     Counts VI and VII of the fourth amended complaint state

claims for negligence against Maynard for his failure to train

---

[15] In his opposition to the motion to dismiss, Davis argued that
he had alleged that Maynard "was directly involved with the
retaliatory decision to transfer" Davis.  ECF No. 93 at 25.  The
fourth amended complaint alleges that Maynard "approved of the .
. . transfer" "through the Case Management Review team and the
commissioner of corrections."  ECF No. 84 ¶203.  Accordingly,
the complaint alleges supervisory, not direct, liability.

[16] Davis alleged that Maynard received an email reporting that,
on September 8, 2008, Davis had "attempted suicide."  ECF No. 84
¶88.  The email did not mention that Davis was dragged or pushed
to the floor, and indicated that Davis had "behavioral
problems."  *Id.* ¶¶85, 88.  Nothing in that email would have
alerted Maynard to the alleged abuse, as it noted only that
Davis might be suicidal and had behavioral problems.  Davis also
did not allege that Maynard knew or should have been aware of
internal Roxbury ARPs; Maynard supervised all prisons.

and supervise Harsh and Rouse, and *respondeat superior* liability for Harsh and Rouse's negligence.  Maynard argues that these claims must be dismissed because he is immune from tort liability under the Maryland Tort Claims Act ("MTCA").  ECF No. 90-1 at 10-11.  Davis did not address the state tort claims in his opposition.  *See* ECF No. 93 at 21-35.

Davis abandoned his state tort claims by failing to respond to the arguments made in the motion to dismiss.  *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010).  Counts VI and VII will be dismissed.

> 3.   The Lack of Discovery

Finally, Davis argues that the Court should not dismiss his claims against Maynard "before the benefit of discovery."  ECF No. 93 at 29.  As Judge Gallagher said when she denied Davis's motion to hold Maynard's motion in abeyance until the close of discovery, this argument "asks this Court to put the cart before the horse."  ECF No. 133 at 2.  "[V]alid claims must be pled before discovery is warranted."  *Id.*  Davis relies on *Johnson v. Prince George's County* in support of his argument, but in that case Chief Judge Chasanow was considering a motion for summary judgment, not a motion to dismiss for failure to state a claim.  No. 10-0582-DKC, 2011 WL 806448 (D. Md. Mar. 1, 2011).  The state of discovery is irrelevant to the pleading sufficiency of the complaint.

Maynard's motion will be granted, and the complaint against him will be dismissed.  Leave to amend will not be granted.

C.   Miller's Motion

Miller contends that he did not authorize the transfer to NBCI, did not know about any alleged retaliation in the transferring decision, and lacked authority to protect Davis from Harsh.  ECF No. 115-1 at 9-11.  He also asserts that he is entitled to qualified immunity.  *Id.* at 11.

1.   Count VIII: Retaliation

The First Amendment protects the right to free speech and "the right to be free from retaliation by a public official for the exercise of that right."  *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000).  To state a claim for retaliation, Davis must show that (1) he engaged in protected speech, (2) a public official responded to the speech with conduct that would chill or adversely affect his protected activity, and (3) the adverse action was caused by the protected speech.  *Id.* at 686.  *De minimus* adverse actions are not actionable.  *The Balt. Sun Co. v. Ehrlich*, 437 F.3d 410, 416 (4th Cir. 2006).

Inmate grievance filings implicate the First Amendment. *See Gullet v. Wilt*, 869 F.2d 593 (table), 1989 WL 14614, *2 (4th Cir. 1989).

17

Davis has also alleged that Miller and others transferred
him to a higher security facility where his freedom was more
restricted, his belongings were taken, and he was denied parole.
ECF No. 84 ¶¶143-44. These adverse actions are actionable. *See*
*Am. Civil Liberties U. of Md., Inc. v. Wicomico Cnty., Md.*, 999
F.2d 780, 786 (4th Cir. 1993) (mere inconvenience is not
actionable).

Finally, Davis has adequately alleged a causal relationship
between his complaints and the transfer because he alleged that
Miller was aware of his grievances and took the action less than
two weeks after Davis's last grievance was filed. *See Constan-*
*tine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d
474, 501 (4th Cir. 2005).[17]

Thus, Davis has adequately pled a retaliation claim against
Miller.

### 2.   Count IX: Deliberate Indifference

The fourth amended complaint alleges that Miller knew or
should have known that Harsh was a threat to inmates, had not
been disciplined for his prior assaults on inmates, was abusing

---

[17] In *Constantine*, the Fourth Circuit noted that allegations of
an official's knowledge of, and action soon after, the protected
speech satisfy the causation requirement when determining
whether the complaint states a claim; it concluded that four to
nine months may be a sufficiently proximate time between the
plaintiff's protected action and the alleged retaliation. 411
F.3d at 501.

Davis, and was allowed to continue to guard Davis. ECF No. 84 ¶¶13, 17, 19-28, 31, 36-44, 90-92, 113, 148.

Davis has also alleged that Miller's response--"continued inaction in the face of documented widespread abuses"--exhibited deliberate indifference. *See Shaw*, 13 F.3d at 799; ECF No. 84 ¶¶31, 56, 82-84, 95.

Miller contends that, even if he knew or should have known of the threat, his inaction did not cause the harm because he was not responsible for disciplining correctional officers. ECF No. 115-1 at 11 (*citing* Md. Code, State Pers. & Pens. § 11-106; Md. Code, Corr. Servs. § 3-215).[18]

*Shaw* and its progeny do not measure indifference solely by a supervisor's stated duties. *See Shaw*, 13 F.3d at 799. Miller could have reported the abuses to Rouse, if he believed that she was unaware of them; as a shift supervisor, he may have had the power to assign Harsh to a different part of Roxbury or otherwise separate Harsh from Davis. Davis has sufficiently

---

[18] Davis captioned count IX as "Deliberate Indifference" in violation of the Eighth Amendment. ECF No. 84 at 37. Miller, as a prison official, had a duty to "guarantee the safety of the inmates" against serious injury. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In his opposition to the motion to dismiss, Davis argued that count IX satisfies the *Shaw* requirements but did not specifically address Miller's Eighth Amendment arguments. *See* ECF No. 124 28-33. To the extent Davis raises an Eighth Amendment claim, he has stated a claim because he has alleged that (1) Miller was deliberately indifferent, and (2) Davis was seriously harmed. *See Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (holding that "minor" injuries are actionable if they "rise[] above the level of *de minimus* harm").

alleged that Miller's failure to act caused his injuries.   He
has stated a claim for failure to protect.

    3.   Qualified Immunity

    Miller contends that he is entitled to qualified immunity
because a reasonable officer would not have known that he was
violating Davis's rights "by 1) signing off on a decision to
increase [Davis's] security status . . .; or 2) signing a
routing slip to indicate receipt of incident reports."   ECF No.
137 at 17.

    Government officials performing discretionary functions are
shielded from liability for civil damages under § 1983 when
their conduct "does not violate clearly established statutory or
constitutional rights of which a reasonable person would have
known."   *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

    Qualified immunity must be pled by the defendant official.
*Id.* at 815.   When the official raises a qualified immunity
defense, the burden shifts to the plaintiff to show that the
official's conduct violated the law.   *Bryant v. Muth*, 994 F.2d
1082, 1086 (4th Cir. 1993).   The defendant must then demonstrate
that the right was not clearly established at the time of the
incident.   *Henry v. Purnell*, 501 F.3d 374, 378 (4th Cir. 2007)
(*citing Wilson v. Kittoe,* 337 F.3d 392, 397 (4th Cir. 2003)).

    Clearly established rights include specifically adjudicated
rights as well as those manifestly included within more general

20

applications of the core constitutional principles involved.
*Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998).  There are
three ways in which law becomes clearly established in Maryland:
(1) an authoritative decision by the United States Supreme
Court; (2) an authoritative decision by the Fourth Circuit Court
of Appeals; or (3) an authoritative decision by the Court of
Appeals of Maryland.  *Id.*  Decisions from other circuits or
states are not authoritative for qualified immunity analysis.
*Id.*[19]

Qualified immunity analysis generally proceeds in two
steps. The Court must decide whether the facts alleged make out
a violation of a constitutional right.  *Pearson v. Callahan*, 129
S. Ct. 808, 815 (2009) (*citing Saucier v. Katz*, 533 U.S. 194
(2001)).  The Court must also decide whether that right was
"clearly established" at the time of the alleged misconduct.  *Id.*
at 818 (the district courts may exercise their sound discretion
in deciding which step in the qualified immunity analysis should
be taken first).

As discussed above, Davis has adequately alleged two
constitutional violations by Miller: retaliation for exercising
his First Amendment rights, and failure to protect against

---

[19] The Fourth Circuit has recognized that "the qualified immunity
question can . . . at times require factual determinations
respecting disputed aspects of [a defendant's] conduct." *Wilson
v. Kittoe*, 337 F.3d 392, 397 (4th Cir. 2003) (*citing Pritchett
v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992)).

pervasive threats in prison. *See* Part II.C.1-2. Those rights
are clearly established.[20] Accordingly, dismissal based on
qualified immunity is not appropriate at this time.

    4.   Estoppel

    Davis argues that other defendants "have recognized . . .
Miller's significant role in plaintiff's claims throughout
discovery and should be estopped from ignoring those facts now."
ECF No. 124 at 22. The relevant inquiry on a motion to dismiss
for failure to state a claim is limited to whether the complaint
adequately states claims for which relief may be granted, not
whether the claim can be proven. *See Presley,* 464 F.3d at 483.
Accordingly, whether the defendants have acknowledged that
Miller was "involve[d]" in the events would not cure the
insufficiencies in the complaint. To avoid converting this into
a motion for summary judgment, the Court excluded matters not
referenced in the complaint, including these apparent
concessions and the numerous documents and statements cited in
and attached to the filings. Fed. R. Civ. P. 12(d).

---

[20] *Turner v. Safley,* 482 U.S. 78, 84 (1987) (prisoners retain
First Amendment right to petition government for the redress of
grievances); *Iko,* 535 F.3d at 238 (inmate's right to be free
from excessive force is clearly established); *Shaw,* 13 F.3d at
798-99 (supervisory liability for subordinate's constitutional
violation is "firmly entrenched").

III. Conclusion

For the reasons stated above, Maynard's motion to dismiss will be granted; Miller's motion will be denied.

_____ 5/15/12 _____
Date

_____
William D. Quarles, Jr.
United States District Judge